# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM MAHON, derivatively on behalf of ABEONA THERAPEUTICS INC., | ) ) ) Civil Action No. |
| Plaintiff, | ) ) ) ) |
| v. | ) ) |
| MARK J. AHN, MARK J. ALVINO, JEFFREY B. DAVIS, STEPHEN B. HOWELL, TODD WIDER, and STEVEN H. ROUHANDEH, | ) ) ) ) ) |
| Defendants. | ) ) ) |
| and | ) ) |
| ABEONA THERAPEUTICS INC., | ) ) ) |
| Nominal Defendant. | ) ) ) ) ) ) |

## VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

On behalf of Nominal Defendant Abeona Therapeutics, Inc. ("Abeona" or the "Company"), Plaintiff William Mahon ("Plaintiff") asserts claims for breach of

fiduciary duty and unjust enrichment against certain current and former members of Abeona's board of directors (the "Board").[1]

## NATURE AND SUMMARY OF THE ACTION

1.     This is a stockholder derivative action brought on behalf of Abeona to recover the excessive and unfair compensation that Abeona's directors have awarded themselves in breach of their fiduciary duties.

2.     The Board is responsible for setting the compensation of its own non-employee members, an arrangement that inherently creates a conflict of interest. Despite this conflict, the Board has never asked Abeona's stockholders to approve the compensation the non-employee directors pay themselves. To the contrary, the Board has abused its discretion by providing non-employee directors with a compensation package that well exceeds a reasonable amount.

3.     During the Company's 2015, 2016 and 2017 fiscal years, Abeona's non-employee directors received average compensation per director of $1,298,250, $555,000 and $581,333, respectively.  Meanwhile, during the same fiscal years, the Company's peers paid their non-employee directors an average compensation package of $152,953, $139,188, and $194,883, respectively.

---

[1] Plaintiff's allegations are made upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, *inter alia*, a review of documents filed by Abeona with the U.S. Securities and Exchange Commission (the "SEC") and other publicly-available documents.

4.      Studies confirm that, no matter the size, industry, or performance of the subject company, non-employee directors rarely ever get paid more than $350,000 a year (let alone the $1,298,250, $550,000, and $581,333 that Abeona's non-employee directors received over the past three fiscal years). For example, a 2017 Director Compensation Report published by Frederic W. Cook ("F. W. Cook"), an executive and director compensation consulting firm, found that for "large-cap" companies (with a market capitalization above $5 billion), median non-employee director compensation was $274,000, and the 75th percentile was $305,000. Similarly, in its 2017 Director Compensation Study, Steven Hall & Partners ("Steven Hall"), an independent compensation consulting firm, found that the 200 companies with the largest revenues in fiscal 2016 paid their non-employee directors median total compensation of $291,667.  Yet with a market capitalization of under $1 billion, Abeona found it fitting to pay their non-employee directors far in excess of what many of the largest companies in the world pay their directors.

5.      During 2015, at the same time the Company's non-employee members paid themselves a lucrative package, they also awarded the Company's two executive directors a compensation package that far exceeded what their executive peers were paid.  These payments were not a valid exercise of business judgment but rather were designed to ensure that the executive directors would not object when

the non-employee directors awarded themselves their own grossly excessive compensation.

6.      Rather than faithfully following their fiduciary duties, the Board acting in their own self-interest, approved (and continues to approve) without explanation an annual compensation package that is excessive and unfair to the Company and its stockholders.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Nominal Defendant Abeona is incorporated in this District.

## THE PARTIES

9.      Plaintiff William Mahon has been a stockholder of Abeona since March 2015. Plaintiff is a citizen of Virginia.

10.      Nominal party Abeona is a Delaware corporation with its principal place of business at 3333 Lee Parkway, Suite 600, in Dallas, Texas. As disclosed in the Company's most-recent Form 10-K Annual Report, Abeona is a "clinical-stage biopharmaceutical company developing cell and gene therapies for life-threatening rare genetic diseases."

4

11.     Defendant Mark J. Ahn ("Ahn") has served on the Board from September 2006 (and as Vice Chairman from January 1, 2015) until his resignation in January 2017. On information and belief, Ahn is a citizen of Oregon.

12.     Defendant Mark J. Alvino ("Alvino") has served on the Board since March 2006. On information and belief, Alvino is a citizen of New York.

13.     Defendant Stephen B. Howell ("Howell") has served on the Board since 1996. On information and belief, Howell is a citizen of California.

14.     Defendant Todd Wider ("Wider") has served on the Board since May 7, 2015. On information and belief, Wider is a citizen of New York.

15.     Defendant Steven H. Rouhandeh ("Rouhandeh") has served as a director and Chairman of the Board since 2008. On information and belief, Rouhandeh is a citizen of New York.

16.     Defendant Jeffrey B. Davis ("Davis") served on the Board from March 2006 until May 2017, and has served as the Company's Chief Operating Officer since January 19, 2015. On information and belief, Davis is a citizen of New Jersey.[2]

17.     Ahn, Alvino, and Howell comprised the Board's Compensation Committee (the "Compensation Committee") in 2015. In 2016 and 2017, the Compensation Committee was comprised of Howell and Alvino.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

---

[2] Defendants are referred to herein as the "Individual Defendants."

18.     By reason of their positions as directors, the Individual Defendants owe the Company and its stockholders the fiduciary duties of good faith, loyalty, due care, and candor, and are required to manage the Company in a fair, just, honest, and equitable manner.

19.     Because of their positions with the Company, the Individual Defendants were able to and did in fact exercise control over the wrongful acts complained of herein.

## FURTHER SUBSTANTIVE ALLEGATIONS

### *The Board Paid Themselves Excessive and Unreasonable Compensation in 2015*

20.     On March 2, 2015, the Board adopted the 2015 Equity Incentive Plan (the "Plan"), subject to approval by the Company's stockholders.

21.     The Plan reserved 5,000,000 shares of Abeona[3] common stock for awards, including stock options, stock appreciation rights, stock awards, restricted stock units, and dividend equivalent rights, to the Company's officers, employees, non-employee directors, consultants, and advisors.

---

[3] At the time, the Company's name was PlasmaTech Biopharmaceuticals, Inc. ("PlasmaTech"). On June 19, 2015, the Company's name was changed to Abeona Therapeutics, Inc. All references to the "Company" and "Abeona" herein include its predecessor, PlasmaTech.

22.   The Compensation Committee was designated as the administrator of the Plan with respect to awards made to executive officers and non-employee directors.

23.   The Plan did not place a cap on the amount of equity awards that the Board's non-employee directors could award themselves. Rather, the terms of the Plan gave the Board complete discretion with respect to the amount they could award themselves. As described below, the non-employee directors abused their discretion by granting themselves unfair and excessive compensation between 2015 and 2017.

24.   On April 7, 2015, Abeona filed its Schedule 14A Proxy Statement (the "2015 Proxy") with the SEC in connection with the Company's 2015 Annual Meeting of Stockholders (the "2015 Annual Meeting").

25.   In Proposal 2 of the 2015 Proxy, the Board sought stockholder approval of the Plan, and stated that it "anticipate[d]" that the 5,000,000 shares reserved under the Plan would "enable [the Company] to fund [their] equity compensation program for approximately four years."

26.   As further described in Proposal 2, as of the time the 2015 Proxy was filed, "no decisions have been made with respect to any issuances under the 2015 Plan," and the amount of equity awards that any individual may receive were "not determinable at this time."

27.     The Company's stockholders approved the Plan at the 2015 Annual Meeting held on May 7, 2015.

28.     Just four days after the Plan was approved, the members of the Board granted substantial stock awards to themselves (the "May 2015 Stock Awards").

29.     At that time, the Board comprised non-employee directors Ahn, Alvino, Howell, and Wider, and executive directors Rouhandeh and Davis.

30.     As disclosed in the Company's Schedule 14 Proxy Statement filed with the SEC on April 6, 2016 (the "2016 Proxy"), on May 11, 2015, the Board granted 575,000 stock options (worth $2,054,000) and 1,175,000 shares of restricted stock (worth $8,626,000) as follows:

| Name | Stock Options | Value of Options | Restricted Stock | Value of Restricted Stock |
|------|--------------|------------------|------------------|---------------------------|
| Rouhandeh | 125,000 | $398,000 | 375,000 | $2,753,000 |
| Davis | 100,000 | $495,000 | 300,000 | $2,202,000 |
| Ahn | 100,000 | $387,000 | 300,000 | $2,202,000 |
| Alvino | 75,000 | $299,000 | 75,000 | $551,000 |
| Howell | 75,000 | $299,000 | 75,000 | $551,000 |
| Wider | 100,000 | $176,000 | 50,000 | $367,000[4] |
| **Total** | **575,000** | **$2,054,000** | **1,175,000** | **$8,626,000** |

31.     In addition to the May 2015 Stock Awards, Abeona's non-employee directors received cash awards as part of their 2015 compensation package.

---

[4] The 2016 Proxy incorrectly disclosed the value of Wider's restricted stock as $176,000, but this was clearly a mistake – 50,000 shares * $7.34 = $367,000.

32.    As disclosed in the 2016 Proxy, the Company's non-employee directors received the following compensation packages for 2015:

| Name | Cash Awards | Option Awards | Restricted Stock Awards | Total |
|---|---|---|---|---|
| Ahn | $250,000 | $387,000 | $2,202,000 | $2,839,000 |
| Alvino | $40,000 | $299,000 | $551,000 | $890,000 |
| Howell | $30,000 | $299,000 | $551,000 | $880,000 |
| Wider | $30,000 | $176,000 | $367,000 | $573,000 |
| **Average** | | | | **$1,295,000** |

33.    The Company's non-employee directors received an average compensation package of $1,295,000. However, because Wider only joined the Board in early May 2015, the three non-employee directors who served the full-year received average compensation of $1,536,333.

34.    The 2016 Proxy did not provide any peer analyses whatsoever or otherwise provide any explanation as to how the Board determined the size of the non-employee Board members' compensation package. Any such analyses would certainly have revealed that the average $1.5 million package (or $1.295 million when counting Wider) was unfair and excessive.

35.    On April 29, 2016, Institutional Shareholder Service, Inc. ("ISS"), a leading provider of proxy research to institutional investors, issued a report (the "2016 ISS Report") in connection with Abeona's 2016 Annual Meeting of Stockholders. The 2016 ISS Report identified the following twenty-four publicly-traded companies as Abeona's peer group: Anthera Pharmaceuticals, Inc.

("Anthera"), Arrowhead Pharmaceuticals, Inc. ("Arrowhead"), Athersys, Inc. ("Athersys"), CEL-SCI Corporation ("CEL-SCI"), Cellular Biomedicine Group, Inc. ("Cellular"), Celsion Corporation ("Celsion"), Cleveland BioLabs, Inc. ("Cleveland"), CorMedix Inc. ("CorMedix"), Cyclacel Pharmaceuticals, Inc. ("Cyclacel"), Discovery Laboratories, Inc. ("Discovery"), Fibrocell Science, Inc. ("Fibrocell"), Fortress Biotech, Inc. ("Fortress"), Galena Biopharma, Inc. ("Galena"), Interleukin Genetics, Inc. ("Interleukin"), La Jolla Pharmaceutical Company ("La Jolla"), Marina Biotech, Inc. ("Marina"), Northwest Biotherapeutics, Inc. ("Northwest"), Opexa Therapeutics, Inc. ("Opexa"), Oragenics, Inc. ("Oragenics"), Organovo Holdings, Inc. ("Organovo"), Pluristem Therapeutics Inc. ("Pluristem"), Progenics Pharmaceuticals, Inc. ("Progenics"), StemCells, Inc. ("StemCells"), and Trovagene, Inc. ("Trovagene") (collectively, the "2015 Peer Group").

36.    The following chart shows the average compensation paid to non-employee directors in the 2015 Peer Group during each company's respective 2015 fiscal year:[5]

| Company | 2015 Avg. Comp |
|---|---|
| La Jolla | $520,136.00 |
| Fortress | $289,900.00 |

---

[5] The information is derived from the "Director Compensation" tables of each company's proxy statement. Only non-employee directors who served on the board of directors for the entire year are included.

| | |
|---|---|
| Arrowhead | $280,183.25 |
| CorMedix | $230,601.60 |
| Progenics | $222,426.00 |
| Galena | $215,887.29 |
| Fibrocell | $204,538.83 |
| Anthera | $183,000.00 |
| Northwest | $150,000.00 |
| Pluristem | $140,209.29 |
| Trovagene | $133,714.67 |
| Organovo | $132,392.80 |
| CEL-SCI | $116,690.00 |
| StemCells | $115,708.33 |
| Oragenics | $102,939.40 |
| Celsion | $100,175.00 |
| Cleveland | $91,684.00 |
| Marina | $85,771.00 |
| Athersys | $84,400.00 |
| Discovery | $69,905.00 |
| Cyclacel | $66,714.14 |
| Opexa | $55,000.00 |
| Interleukin | $53,250.00 |
| Cellular | $25,649.88 |
| **Average** | **$152,953.19** |

37.     As the chart illustrates, the compensation paid to Abeona's non-employee directors bears no resemblance to the peer group. The $1,295,000 in compensation that the Company's non-employee directors paid themselves during fiscal 2015 is approximately 149% more than the high-end of the range, 747% more than the $152,953 average, 940% more than the median, and 4,949% more than the low-end range.

38.    As part of the May 2015 Stock Awards, the two executive directors on the Board, Rouhandeh and Davis, also received lucrative awards. Rouhandeh received stock awards valued at $3,151,000, and Davis received stock awards valued at $2,697,000.

39.    As a result of the May Stock Awards, Rouhandeh's and Davis's 2015 compensation packages were likewise excessive and unreasonable.

40.    Specifically, as disclosed in the 2016 Proxy, Rouhandeh's total 2015 compensation was valued at $3,511,000 (the $3.1 million in stock awards combined with a $360,000 salary), and Davis's total 2015 compensation was valued at $3,022,000 (the $2.7 million in stock awards combined with a $325,000 salary).

41.    The $3,511,000 received by Rouhandeh was a staggering 573% more than the $523,000 compensation he received in 2014, while Davis's $3,022,000 package was 447% more than his 2014 package valued at $552,000.

42.    The chart below shows the 2015 compensation received by the Chief Executive Officers of the same 24 companies that comprised the 2015 Peer Group:

| Company | CEO 2015 Compensation |
|---|---|
| La Jolla | $15,637,928 |
| Cellular | $3,734,530 |
| Anthera | $3,237,650 |
| Fortress | $3,066,727 |
| Galena | $2,758,586 |
| StemCells | $2,522,722 |
| Arrowhead | $2,319,750 |

| | |
|---|---|
| Interleukin | $2,280,582 |
| Progenics | $1,610,729 |
| Fibrocell | $1,226,595 |
| Celsion | $1,201,568 |
| Pluristem | $1,015,213 |
| Cyclacel | $982,045 |
| Athersys | $921,167 |
| Discovery | $876,806 |
| Organovo | $834,429 |
| CorMedix | $723,740 |
| Trovagene | $681,500 |
| CEL-SCI | $585,114 |
| Opexa | $508,737 |
| Northwest | $500,000 |
| Marina | $425,000 |
| Oragenics | $419,160 |
| Cleveland | $299,577 |
| **Average** | **$2,015,411** |

43.     As the chart reveals, Rouhandeh's 2015 compensation was higher than all but two of his 24 peers and was 74% more than the $2,015,411 average and 252% more than the $998,629 median.

44.     Davis's 2015 compensation was greater than all but four peers and was 50% more than the $2,015,411 average and 203% more than the $998,629 median.

45.     Notably, Rouhandeh and Davis are not even CEOs, and yet their compensation for 2015 substantially exceeded what the average CEO of the peer companies made. Indeed, taking just the value of the May 2015 Stock Awards alone, Rouhandeh and Davis each received far more than the $1,871,000 in total

compensation received by Abeona's CEO, Timothy Miller, from his hiring on May 15, 2015 through the end of 2016 (a period of more than 19 months).

46.     Like the non-employee director compensation package, the 2016 Proxy provides no peer analyses that purport to justify the May 2015 Stock Awards. Nor does the 2016 Proxy attempt to explain why Rouhandeh and Davis were given such generous raises when compared to 2014.  In fact, there is simply no discussion in the 2016 Proxy as to how the Rouhandeh's and Davis's 2015 compensation was determined.

47.     The Board's decision to award Rouhandeh and Davis the $3.5 million and $3 million compensation package, respectively, in 2015 was not based on valid business reasons. Rather, the lucrative packages were part of an express or implied *quid pro quo* arrangement pursuant to which the Board awarded Rouhandeh and Davis a lavish package so that Rouhandeh and Davis would not object when the non-employee directors awarded themselves their own grossly excessive compensation packages. Indeed, the May 2015 Stock Awards represent the largest portion of each Board member's compensation package, and these awards were made on the same day to each and every Board member.

### *The Board Paid its Non-Employee Members Excessive and Unreasonable Compensation in 2016 and 2017*

48.     The excessive and unreasonable compensation that Abeona's non-employee directors paid themselves continued in fiscal 2016 and 2017.

49.     Abeona's 2016 fiscal year ended on December 31, 2016. As disclosed in the Company's Schedule 14A Proxy Statement filed with the SEC on April 11, 2017 (the "2017 Proxy"), during the 2016 fiscal year Abeona's non-employee directors each received (a) $10,000 per quarter; (b) stock option awards under the Plan; and (c) with respect to Ahn, an additional $294,000 in cash and a $98,000 cash bonus, for his service as Vice Chairman of the Board. As set forth in the chart below, the non-employee directors receive an average of $555,000 in compensation:

| Name | Cash Awards | Bonus | Option Awards | Restricted Stock Awards | Total |
|------|-------------|-------|---------------|-------------------------|-------|
| Ahn | $334,000 | $98,000 | $799,000 | $0 | $1,231,000 |
| Alvino | $40,000 | | $266,000 | $0 | $306,000 |
| Howell | $40,000 | | $266,000 | $0 | $306,000 |
| Wider | $40,000 | | $266,000 | $71,000 | $377,000 |
| Average | | | | | **$555,000** |

50.     The Company's 2017 fiscal year ended on December 31, 2017. As disclosed in Abeona's Schedule 14A Proxy Statement filed with the SEC on April 10, 2018 (the "2018 Proxy"), during the 2017 fiscal year Abeona's non-employee directors each received (a) $10,000 per quarter; (b) stock option awards under the Plan; and (c) with respect to Wider, a $484,000 equity award under the Plan for performing as Chairman of the Medical Affairs Committee. As set forth in the chart below, the non-employee directors received an average of $581,333 in compensation:

| Name | Cash Awards | Option Awards | Restricted Stock Awards | Total |
|------|------------|---------------|------------------------|-------|
| Alvino | $40,000 | $380,000 | $0 | $420,000 |
| Howell | $40,000 | $380,000 | $0 | $420,000 |
| Wider | $40,000 | $380,000 | $484,000 | $904,000 |
| **Average** | | | | **$581,333** |

51.　　Just like the 2016 Proxy, neither the 2017 Proxy nor the 2018 Proxy provides any sort of peer analysis or rationale for such large compensation. On April 24, 2017, ISS issued a report (the "2017 ISS Report") in connection with Abeona's 2017 Annual Meeting of Stockholders. The 2017 ISS Report identified the following 24 publicly-traded companies as Abeona's peer group: Advaxis, Inc. ("Advaxis"), Anthera, Arrowhead, Bioptix Inc. ("Bioptix"), Cellular, Celsion, Cyclacel, CytRx Corporation ("CytRx"), Fibrocell, GenVec, Inc. ("GenVec"), Idera Pharmaceuticals, Inc. ("Idera"), Interleukin, La Jolla, MEI Pharma, Inc. ("MEI"), Northwest, Nymox Pharmaceutical Corporation ("Nymox"), Oragenics, OvaScience, Inc. ("OvaScience"), Pluristem, Stemline, Sunesis Pharmaceuticals, Inc. ("Sunesis"), TG Therapeutics, Inc. ("TG"), TrovaGene, and Windtree Therapeutics, Inc. (Windtree) (collectively, the "2016 Peer Group").

52.　　On April 19, 2018, ISS issued a report (the "2018 ISS Report") in connection with Abeona's 2018 Annual Meeting of Stockholders. The 2018 ISS Report identified the following 24 publicly-traded companies as Abeona's peer group: Adamas Pharmaceuticals, Inc. ("Adamas"), Adverum Biotechnologies, Inc.

("Adverum"), Alder BioPharmaceuticals, Inc. ("Alder"), Arbutus Biopharma Corporation ("Arbutus"), ArQule, Inc. ("ArQule"), Cara Therapeutics, Inc. ("Cara"), Cellular, Corbus Pharmaceuticals Holdings, Inc. ("Cobus"), Coherus BioSciences, Inc. ("Coherus"), CytRx, Dicerna Pharmaceuticals, Inc. ("Dicerna"), Geron Corporation ("Geron"), Karyopharm Therapeutics Inc. ("Karyopharm"), La Jolla, Matinas BioPharma Holdings, Inc. ("Matinas"), Nymox, Otonomy, Inc. ("Otonomy"), OvaScience, Inc. ("OvaScience"), PolarityTE, Inc. ("PolarityTE"), Regulus Therapeutics Inc. ("Regulus"), Stemline, Sunesis, TG, and Ultragenyx Pharmaceutical Inc. ("Ultragenyx") (collectively, the "2017 Peer Group").

53. The following chart shows the average compensation paid to non-employee directors of the 2016 Peer Group and 2017 Peer Group, during their respective 2016 and 2017 fiscal years:[6]

| Company | 2016 Avg. Comp |
|---------|----------------|
| Advaxis | $493,811.57 |
| Arrowhead | $246,833.33 |
| Anthera | $233,707.17 |
| La Jolla | $220,362.00 |
| Oragenics | $204,533.75 |
| Stemline | $204,396.50 |
| Northwest | $146,400.00 |
| OvaScience | $144,827.29 |
| CytRx | $132,315.00 |

| Company | 2017 Avg. Comp |
|---------|----------------|
| Coherus | $381,103.43 |
| PolarityTE | $364,691.67 |
| Ultragenyx | $339,074.00 |
| Matinas | $272,756.00 |
| Cara | $270,443.00 |
| Stemline | $268,693.50 |
| La Jolla | $262,635.00 |
| Adamas | $230,431.50 |
| TG | $225,382.66 |

[6] The information is derived from the "Director Compensation" tables of each company's proxy statement. Only non-employee directors who served on the board of directors for the entire year are included. Data for Nymox Pharmaceutical Corporation, which was listed by ISS as a peer for fiscal 2016 and 2017, is not available.

| | | | | |
|---|---|---|---|---|
| TG | $126,669.67 | Corbus | $208,114.75 |
| Cellular | $117,133.72 | Alder | $193,125.86 |
| TrovaGene | $116,104.33 | Otonomy | $192,250.67 |
| MEI | $99,398.00 | Karyopharm | $164,871.86 |
| Fibrocell | $84,858.33 | Geron | $158,311.67 |
| Windtree | $84,335.00 | Regulus | $155,930.17 |
| Celsion | $84,111.50 | CytRx | $133,700.00 |
| Idera | $79,736.25 | Cellular | $116,449.42 |
| Sunesis | $74,308.50 | Sunesis | $111,593.57 |
| Pluristem | $69,793.14 | Dicerna | $110,648.86 |
| Interleukin | $66,750.00 | Adverum | $97,465.00 |
| GenVec | $65,357.17 | OvaScience | $93,445.71 |
| Cyclacel | $60,025.00 | ArQule | $67,976.29 |
| Riot Blockchain[7] | $45,571.40 | Arbutus | $63,235.83 |
| **Average** | **$139,188.64** | **Average** | **$194,883.93** |

54.     The $555,000 and $581,333 in compensation that the Company's non-employee directors paid themselves during Abeona's 2016 and 2017 fiscal years sits atop both charts. The $555,000 average 2016 compensation that Abeona's directors received is 12% more than the high-end of the range, 299% more than the $139,188.64 average, 378% more than the $116,104.33 median, and 1,118% more than the low-end of the range. The $581,333 average 2017 compensation that Abeona's directors received is 53% more than the high-end of the range, 198% more than the $194,883.93 average, 202% more than the $192,250.67 median, and 819% more than the low-end of the range. Only Advaxis, another outlier, is even in the

---

[7] In 2017, Bioptix Inc. changed its name to Riot Blockchain.

same ballpark as Abeona, while the overwhelming majority of peer companies do not even break $300,000.

55.    The unfairness of Abeona's non-employee director compensation package is confirmed by other market-based studies. F.W. Cook, an executive and director compensation consulting firm, publishes an annual study of compensation paid to non-employee directors and executives using 300 companies of various sizes and industries. In November 2017, F.W. Cook published its 2017 Non-Employee Director Compensation Report, which found that the median, non-employee director compensation for "large-cap" companies (with a market capitalization above $5 billion) was $274,000, while the 75th percentile was $305,000.

56.    Similarly, Steven Hall, an "independent compensation consulting firm, specializing exclusively in the areas of executive compensation, board remuneration and related corporate governance issues," publishes an annual study of compensation to non-employee directors. In its 2017 Director Compensation Study, Steven Hall reviewed 600 proxy statements filed between June 1, 2016 and May 31, 2017. The reviewed companies included 200 companies with the largest revenues in fiscal 2016 ("top 200"), 200 companies in the S&P 400 ("mid-cap 200"), and 200 companies in the S&P Small Cap 600 ("small-cap 600"). As the Steven Hall study revealed, median total compensation paid to non-employee directors equaled

$291,667 among the top 200 companies, $222,917 among the mid-cap 200 companies, and $172,283 among the small-cap 200 companies.

57.    As the F.W. Cook, Steven Hall, and ISS peer group studies above reveal, no matter the size, industry, or performance of the subject company, non-employee directors rarely ever receive a compensation package exceeding $400,000 a year. Abeona is clearly a "small-cap" company, and yet its non-employee directors continue to receive over $500,000 in compensation on average.

## DEMAND FUTILITY ALLEGATIONS

58.    Plaintiff brings this action derivatively on behalf of Abeona to redress injuries to the Company as a direct and proximate result of Defendants' misconduct.

59.    Plaintiff has owned Abeona common stock during the time of the wrongful course of conduct alleged herein and continues to hold Abeona stock.

60.    Plaintiff will adequately and fairly represent the interests of Abeona in enforcing and prosecuting its rights and has retained counsel competent and experienced in stockholder derivative litigation.

61.    At the time of this filing, the Board consists of the following seven directors: Rouhandeh, Carsten Thiel ("Thiel"), Wider, Howell, Alvino, Stefano Buono, and Richard Van Duyne (the "Current Board").

62.    Plaintiff did not make a demand on the Current Board prior to instituting this action because such a demand is futile.

63.     Four of the seven current Board members – Rouhandeh, Wider, Howell, and Alvino – received compensation being challenged herein. Accordingly, each of Rouhandeh, Wider, Howell, and Alvino has a strong financial incentive to maintain the status quo by not authorizing any corrective action that would force them to disgorge the excessive compensation they granted themselves. Accordingly, each of Rouhandeh, Wider, Howell, and Alvino are interested in this litigation, and would not be able impartially to consider a demand. As four of the seven Board members are interested in this litigation, demand is excused.

64.     Defendant Thiel is incapable of considering a demand in this action because he is not independent from the four interested directors. Thiel joined Abeona as the Company's Chief Executive Officer in April 2018 and his livelihood is currently dependent on the compensation he receives in this full-time position. Thiel thus will not sue the four interested non-employee directors, the very people responsible for determining his compensation package. Accordingly, demand as to Thiel is excused as well.

## COUNT I
### Breach of Fiduciary Duty
### (Against All Defendants)

65.     Plaintiff repeats each allegation set forth above as if set forth fully herein.

66.    As directors of the Company, each Defendant owed fiduciary duties to the Company and its stockholders.

67.    The Defendants breached their fiduciary duty of loyalty by granting and accepting compensation in fiscal years 2015, 2016, and 2017 in amounts that were excessive and unfair to the Company.

68.    As a result of Defendants' actions, the Company has been and will be damaged.

69.    Plaintiff, on behalf of the Company, has no adequate remedy at law.

### COUNT II
**Unjust Enrichment**
**(Against All Defendants)**

70.    Plaintiff repeats each allegation set forth above as if set forth fully herein.

71.    Each of the Defendants received excessive and unfair financial benefits as a result of the various payments described above.

72.    It would be unconscionable and against fundamental principles of justice and equity for the Defendants to retain the benefits of these excessive and unfair payments.

73.    Plaintiff, on behalf of the Company, has no adequate remedy at law.

### COUNT III
**Waste**
**(Against All Defendants)**

74.     Plaintiff repeats each allegation set forth above as if set forth fully herein.

75.     As a result of Defendants' self-dealing, the Company has wasted valuable assets by paying excessive compensation.

76.     As a result of the waste of corporate assets, Defendants are liable to the Company.

77.     Plaintiff, on behalf of the Company, has no adequate remedy at law.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.      Disgorging the excessive and unfair payments granted to the non-employee directors during fiscal years 2015, 2016, and 2017, plus pre-judgment and post-judgment interest;

B.      Disgorging the excessive and unfair payments granted to the executive directors during fiscal year 2015, plus pre-judgment and post-judgment interest;

C.      Equitable and injunctive relief as permitted by law, including imposition of a constructive trust on Defendants to ensure Plaintiff on behalf of the Company will have an effective remedy;

D.     Awarding damages against all Defendants in favor of the Company as a result of Defendants' breaches of fiduciary duties, plus pre-judgment and post-judgment interest;

E.     Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

F.     Granting Plaintiff such other and further relief as the Court may deem just and proper.

Dated: November 28, 2018

Of Counsel:

Steven J. Purcell
Douglas E. Julie
Robert H. Lefkowitz
Purcell Julie & Lefkowitz LLP
708 3rd Avenue, 6th Floor
New York, New York 10017
212-725-1000

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*